## Groves, et al. v. Bryant, Extrx. and Sole Devisee.

(Decided December 2, 1919.)

### Appeal from Simpson Circuit Court.

1. Quieting Title—Possession of Plaintiff—Finding of Chancellor. —In this action quia timet the plaintiff's actual possession of the real estate in controversy for more than forty years was alleged in the petition and established by uncontradicted evidence, but his claim of title to the property, asserted through a deed alleged to have been made him which, together with the duly recorded evidence thereof, was destroyed by fire, being denied by the defendant's answer, which, in addition, alleged that the title

to the property was not conveyed by the destroyed deed to the plaintiff but to his childless wife, by whose subsequent death it descended to the defendants as her heirs at law, the important question presented for the decision of the chancellor by the pleadings and proof was one of fact, viz: whether the destroyed deed conveyed to the husband or his wife the title to the property in question. And notwithstanding its conflicting character, as the chancellor's finding that the deed conveyed the title to the husband cannot be said to be contrary to the weight of the evidence, the judgment so declaring will not be disturbed.

2.  Appeal and Error—Finding of Chancellor.—In an action in equity the circuit court's findings of fact will, on appeal, be given some weight by the appellate court, and that court will examine and weigh the evidence for itself, but will not disturb the judgment unless it is found to be unsupported by the weight of the evidence; and if from its examination of the evidence, doubt arises as to whether it supports the judgment, it will in that event affirm the judgment.

G. W. ROARK and SIMS, RODES & SIMS for appellants.

C. B. MOORE and G. T. FINN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment of the Simpson circuit court, rendered in an action *quia timet,* declaring the appellee, Sue Bryant, as sole devisee under the will of Eli Bryant, deceased, the owner of a house and lot in the city of Franklin and quieting her title to same as against the appellants, Billy Groves and others, who asserted claim to the property as heirs at law of Isaac Groves, deceased.

The single question presented for decision by the appeal will readily be understood from the following brief statement of the facts out of which the litigation arose. The action was originally instituted by Eli Bryant in whom the petition alleged title to and possession of the house and lot in question, acquired through its purchase by him in 1874 of, and conveyance by deed from, the trustee in bankruptcy of a partnership known as "Knapp, Smithson & Horn" and the several members thereof at a sale made by him of same and other property of the bankrupt firm and its members; that he paid the trustee in bankruptcy for the house and lot and upon receiving the deed from the latter caused it to be duly recorded in the office of the clerk of the Simpson county court, but

after it was recorded neglected to obtain from the county clerk's office the original deed, which, together with the record made of it in the office of the county clerk, all other records of that office and others in the court house of Simpson county, was consumed in a fire by which that building was burned and entirely destroyed in 1882. It was also alleged in the petition that by the deed mentioned he, Eli Bryant, was invested with the fee simple title to the house and lot in controversy, the possession of which he held at the time of the institution of this action and had continuously enjoyed without interruption, adversely to all others, for more than thirty years and, in fact, ever since its purchase by him in 1874; and that one Isaac Groves, the defendant originally named in the petition, had by wrongfully claiming to be the owner of the house and lot and threatening to sue for the possession of same, cast a cloud upon the plaintiff's title to the property and interfered with his peaceable possession thereof. The prayer of the petition asked that the plaintiff be adjudged the owner of the house and lot and that his title thereto be quieted.

The answer of Isaac Groves denied Bryant's title to the house and lot, alleged that the property was purchased by Mary Bryant, his first wife, a daughter of Isaac Groves; that it was paid for by her with money furnished her by the father and the title conveyed her, instead of her husband, by the deed from the trustee in bankruptcy of Knapp, Smithson & Horn; and that by her death in 1895, intestate and childless, he as her father and only heir at law, under the statute of descent and distribution of this state, at once took the title to the property and also the right of the possession thereof. By the prayer of the answer the court was asked to quiet Isaac Groves' title to the house and lot and compel the immediate delivery to him of the possession thereof.

After giving their depositions, and following the taking of those of substantially all the other witnesses in the case, both Bryant and Groves died, the former testate and childless. By his will the appellee, Sue Bryant, his second and surviving wife, was made executrix thereof and the sole devisee of his estate. Isaac Groves died intestate, survived by the several children whose names appear as appellants in the record brought to this court on the present appeal. Pursuant to an agreement of the

parties and the entering of the necessary orders, the action was duly revived in the court below by making the appellee, Sue Bryant, as the executrix of and sole devisee under Eli Bryant's will, a party plaintiff and the appellants, Billy Groves and others, as heirs at law of Isaac Groves, parties defendant to the action.

We have rarely found evidence more conflicting than that contained in the record of this case. That of appellants strongly conduces to sustain their contention that the deed conveying the lot in controversy was made to the first wife of Eli Bryant, while that of appellee is equally strong to the effect that it conveyed the lot to the latter. Isaac Groves, the father of the first wife of Bryant, testified that he let Bryant have the money to pay for the property with the understanding that it was purchased for and was to be conveyed his daughter, the wife of Bryant. The latter testified with equal positiveness that this was not true, but that the money paid for the property was furnished by him alone and the deed made to him.

There was also an abundance of evidence to the effect that Isaac Groves was insolvent at the time he claims to have furnished the money to buy the lot for his daughter and, by reason thereof, without ability or means to give or advance her the $1,800.00, required to pay for the lot. On the other hand it seems apparent from the evidence that Eli Bryant was then able to pay for it. Two or three witnesses claimed to have seen in the possession of the first Mrs. Bryant the original deed by which she was conveyed the lot, but it will be found, with perhaps one exception, that these witnesses were defendants to the action or related to the defendants. On the other hand Eli Bryant and others testified that the deed was made to him and not to his wife, and that it was never in her possession, but was destroyed with the court house. It was also testified in substance by Isaac Groves and other members of the Groves family that Eli Bryant admitted to him or them that the title to the lot had been in his wife's name and that at his death it would go to the Groves family; but this was all denied by Bryant and contradicted by other witnesses.

It is claimed for appellants that Geo. B. Knapp's testimoney shows the first Mrs. Bryant to have been the purchaser of the lot and that the deed was made to her.

We fail to find that Knapp's testimony conclusively sustains this contention. On the contrary it shows that Eli Bryant was the bidder for the property, that it was knocked down to him and that the witness was unwilling to positively state that Mrs. Bryant was the purchaser. It is true he said he believed he wrote the deed and notes and that "to the best of his recollection" the deed was made to Mrs. Bryant, but he did not positively say that this was so and his deposition, as a whole, leaves the impression that his mind was not entirely free of doubt as to the identity of the person named as grantee in the deed. It is not to the discredit of the witness that he would not be positive in his statements as to this matter, in view of his age and blindness and the long time intervening between the sale of the property and the taking of his deposition.

Without going into further details regarding the evidence contained in the numerous depositions found in the record, it is sufficient to say that it was as conflicting as the nearly equal number of opposing witnesses giving the depositions could make it; so conflicting, indeed, as to render it a difficult task for the chancellor to determine from the depositions alone how the issues of fact made by the pleadings should be decided. The record furnishes, however, in the way of circumstantial evidence certain acts, both of Eli Bryant and Isaac Groves, with respect to the property in question, that doubtless had weight with the chancellor in arriving at the conclusions expressed in the judgment appealed from.

Some of the circumstances will briefly be stated. Although it was claimed by Isaac Groves, and is now insisted by appellants, that the title to the real estate in controversy was in Mary Bryant, the former's daughter, at the time of her death in 1895, and that by reason thereof and the fact that no issue was born alive of her marriage with Eli Bryant, the title to the property at once descended to him (Isaac Groves), yet it appears from the evidence that he did not then claim or demand possession of it, nor did he do so until 1914, or nineteen years later, and shortly before the bringing of this action by Bryant to quiet his title.

It is hardly believable that Isaac Groves in 1874 advanced his daughter, Mary Bryant, $1,800.00, to pay for this property, in view of the conclusive showing made by

the evidence of his insolvency at that time; and, in view of the same showing of the continuance of his insolvency down to the institution of this action by Bryant, and consequent need, it is difficult to understand why he did not earlier demand the surrender to him of the property he claimed to have inherited from her. As it appears from the evidence that Groves had other children more dependent upon him in 1874 and since than was Mrs. Bryant, it is strange that in his then embarrassed financial condition, he should have singled her out, to the exclusion of his other children, as an object of his bounty.

It is, however, insisted for appellants that Eli Bryant's lack of title to the property and his wife's evidence of title to it, is shown by a return of "no property found" made by the sheriff upon an execution against Bryant placed in his hands for collection shortly before the death of the latter's wife. There would be much force in this contention if it were shown by the evidence that the return upon the execution was based upon a statement or assurance of Bryant that he was not the owner of this or any other property. But there was no proof of any such representation by Bryant. Bryant himself then had no written evidence of his title to the property, and the same would have been true if the title had been conveyed to his wife, because the original deed and record made thereof were both burned in the fire which destroyed the court house in 1882. It does, however, appear from the evidence that there was at the time the execution referred to was in the hands of the sheriff a mortgage on the property which had been executed by Bryant to secure a fee of $900.00 he was owing a firm of lawyers for services they had rendered him. This mortgage had been duly recorded, but his wife, Mary Bryant, who was then living, was not a party to the instrument nor had she united with him in executing it. As the mortgage appeared of record in the office of the county court clerk and its existence was therefore presumably known to the sheriff, it cannot be told whether his return of the execution with its endorsement "no property found" was made because of his belief that a sale of the property, following a levy on it of the execution, would leave nothing of its proceeds to go on the execution after paying the mortgage debt and the value of Bryant's homestead,

or whether it was returned for some other reason. At any rate under the circumstances shown the execution and return thereon are of little value as tending to establish the identity of the owner of the property in question.

On the other hand the facts shown by the evidence respecting the execution of the mortgage by Bryant alone and its acceptance by the attorneys to whom it was made, without objecting to his wife's failure to join in it, would seem to authorize the presumption that they were satisfied of his ownership of the mortgaged premises and also that the value of the property, after deducting the value of the homestead and that of the wife's potential right or dower, would afford ample security for the mortgage debt. But conceding that the presumption of title in the husband thus arising is so remote as to be entitled to little weight, the other circumstances previously mentioned, together with the claim of title to, and possession of it, the property asserted and held by Eli Bryant, both before and after the death of Mary Bryant, in fact ever since its purchase and covering altogether a period of more than forty years, during the whole of which time it was year by year listed by him for taxation as his property and the taxes paid thereon by him, present as whole a chain of circumstantial evidence giving at least colorable support to the findings of fact arrived at by the circuit court.

While the evidence before us is conflicting, parts of it incompetent and much of it unsatisfactory, yet viewing it from every reasonable standpoint, we find ourselves unwilling to say that the chancellor has so erred in his findings of fact as to authorize a reversal of the judgment. On appeal in an equitable action, a mere doubt in the minds of the appellate court of the correctness of the chancellor's findings is not sufficient to authorize a reversal. Perhaps the most recent elaborate statement of the rule here applicable will be found in Meek v. Ward, 184 Ky. 30:

"In an action at law tried by the circuit court, its findings of fact will be given the legal effect accorded the verdict of a properly instructed jury. In an action in equity, while the circuit court's findings of fact will not, on appeal, be treated as the verdict of a properly instructed jury, they will be entitled to some weight, and though the Court of Appeals will and does examine and

weigh the evidence for itself, it will not disturb the judgment unless it is found to be unsupported by the weight of the evidence; and if left in doubt, from its examination of the evidence, whether it supports the judgment, it will in such state of case affirm the judgment." Hollingsworth v. Alvey, 182 Ky. 334; Fields v. Couch, 169 Ky. 544; Herzog v. Gibson, 170 Ky. 325.

Judgment affirmed.